REITLER KAILAS & ROSENBLATT LLC          Hearing Date:  April 4, 2018
Yann Geron                               At: 10:00 a.m.
Jeannette Litos
885 Third Avenue, 20th Floor             Objection Deadline:  March 28, 2018
New York, New York 10022
(212) 209-3050

*Attorneys for Yann Geron, Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                          :          Chapter 7
                                               :
SCANDIA SEAFOOD (NEW YORK), INC.,              :          Case No. 17-10744-MEW
                                               :
                    Debtor.                    :
------------------------------------------------------------x

**CHAPTER 7 TRUSTEE'S APPLICATION FOR AN ORDER (I) AUTHORIZING
TRUSTEE TO CONTINUE THE DEBTOR'S ASSIGNMENT FOR THE BENEFIT OF
CREDITORS, GAIN CONTROL OVER SUCH ASSIGNMENT PROCEEDING, AND
PURSUE STATE LAW PREFERENCE CLAIMS IN SUCH ASSIGNMENT
PROCEEDING FOR THE BENEFIT OF THE DEBTOR'S CHAPTER 7 ESTATE, OR
ALTERNATIVELY, (II) AUTHORIZING TRUSTEE TO PURSUE THE STATE LAW
PREFERENCE CLAIMS DIRECTLY UNDER THE BANKRUPTCY CODE**

TO THE HONORABLE MICHAEL E. WILES,
UNITED STATES BANKRUPTCY JUDGE:

          Yann Geron (the "Trustee"), the chapter 7 trustee of the estate of Scandia Seafood

(New York), Inc. ("Scandia" or the "Debtor"), the above-captioned debtor, by and through his

counsel, Reitler Kailas & Rosenblatt LLC, as and for his application for an order (i) authorizing

the Trustee to continue the assignment for the benefit of creditors, gain control over such

assignment proceeding, and pursue state law preference claims in the assignment proceeding, or

alternatively, (ii) authorizing the Trustee to pursue the state law preference claims directly under

the Bankruptcy Code, respectfully sets forth and represents as follows:

## Jurisdiction

1.      On March 28, 2017 (the "Petition Date"), nine creditors (collectively, the "Petitioning Creditors")[1] commenced the above-captioned case (the "Bankruptcy Case") by filing an involuntary petition (the "Involuntary Petition") under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") against the Debtor, a New York corporation formerly engaged in purveying fresh and frozen seafood and prepared foods in Secaucus, New Jersey.

2.      This Court has jurisdiction over this case and application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Summary of Relief Requested

3.      The Trustee seeks an order authorizing him to pursue state law preference claims in the aggregate amount of approximately $3 million (the "Total Preference Claim Amount").  The Trustee can pursue these claims by continuing and taking control of the Debtor's pending Assignment Proceeding, as defined below, including by substituting himself as the assignee in that proceeding.  Alternatively, the Trustee seeks authority to pursue the state law preference claims directly as part of this Bankruptcy Case.

4.      These preference claims represent by far the largest asset available for satisfaction of claims of unsecured creditors.  Indeed, if the Trustee is not able to pursue the Preference Actions, as defined below, there may be little, if any, distribution to unsecured creditors.

---

1 The Petitioning Creditors are Clear Water Fish Co., Inc., Beyer Lightning Fish Co. Inc., Joe Monani Fish Co., Universal Seafood, Inc., R&R Ocean Products Unlimited, Inc., Blue Harvest Foods LLC, Lockwood & Winant, Montauk Seafood Co., Inc., and JMS Seasonal Seafood Corp.

5.      As far as the Trustee has been able to ascertain, there is scarce precedent for the relief sought by this application, but this relief is nonetheless necessitated by the unusual circumstances which led to the commencement of this proceeding and well supported under the Bankruptcy Code.  Specifically, the commencement of an involuntary proceeding by creditors who are defendants in state law preference actions, and timed in a manner to potentially cut-off both state and federal preference claims, does not appear to be an event which occurs often, which serves to explain the dearth of direct precedent.  As further detailed below, this application is fully supported by the Bankruptcy Code, such relevant case law that exists regarding the interplay between bankruptcy and state law assignment proceedings, and the policies underlying the Bankruptcy Code.

## Factual Background

6.      On December 6, 2016 (the "Assignment Filing Date"), the Debtor's principals, Adam Licht and Stephen Tucker, filed an Assignment for the Benefit of Creditors in New Jersey State Superior Court (Chancery Division, Union County, Docket No R2849) pursuant to a deed of assignment dated November 29, 2016 (the "Assignment Proceeding"). Donald F. Campbell, Jr., Esq. (the "Assignee") was appointed by them to serve as assignee for the benefit of creditors in the Assignment Proceeding on the same day.

7.      The Assignee retained Steven J. Mitnick, Esq., of SM Law, PC ("SM Law"), to pursue state law preference claims on behalf of the Assignee pursuant to N.J.S.A. § 2A:19-3.[2]  In March 2017, SM Law commenced suit against numerous transferees who received

---

2 "If any person being insolvent or in contemplation of insolvency shall, within 4 months before the making of a general assignment, and with the intention of preferring any creditor or person under liability for him, mortgage, pledge, assign, pay or transfer any of his property, or procure or suffer any of his property to be taken, attached or levied upon, or any lien or encumbrance to be acquired thereon by legal process or otherwise, such preferential transaction shall be void as against the assignee.  The assignee may recover the property given by way of preference, or the value thereof, from the person so receiving the same or so benefited thereby."

payment within 120 days of the Assignment Filing Date (the "Preference Actions").  Upon information and belief, the total face value of the claims sought by the Preference Actions is approximately $3 million.

8.    Based upon his preliminary review of the Preference Actions and information obtained from SM Law, the Trustee has concluded that the Preference Actions are strong and if pursued would result in significant recoveries for the estate.  In fact, SM Law has collected $107,250.86 on account of settlements of certain of those Preference Actions.  Recognizing that these collections represented assets of the chapter 7 estate, the Assignee turned the funds he had collected over to the Trustee, who currently holds them.

9.    In light of the commencement of the Bankruptcy Case, the Preference Actions have been dismissed without prejudice to being reinstated in the Assignment Proceeding.  Further action in connection with the claims asserted in the Preference Actions awaits action by the Trustee or disposition of the Assignment Proceeding.

10.    Each of the Petitioning Creditors is a named defendant in the Preference Actions.  In the aggregate, the claims against the Petitioning Creditors account for over $1.1 million of the Total Preference Claim Amount, as follows:

(a)    Clear Water Fish Co. Inc., in the amount of $221,253.87;

(b)    Beyer Lightning Fish Co., Inc. in the amount of $408,900.05;

(c)    Joe Monani Fish Company, Inc., in the amount of $47,214.18;

(d)    Universal Seafood, Inc., in the amount of $44,226.58;

(e)    R&R Ocean Products Unlimited, Inc., in the amount of $89,317.24;

     (f)     Blue Harvest Foods LLC, in the amount of $10,422.25;

     (g)     Lockwood & Winant, in the amount of $187,741.85;

     (h)     Montauk Seafood Co., Inc. in the amount of $81,634.96; and

     (i)     JMS Seasonal Seafood Corp., in the amount of $45,347.26.

11.     The Involuntary Petition was filed 112 days after the appointment of the Assignee, and less than one month after the commencement of the Preference Actions in the Assignment Proceedings. Notably, the Debtor ceased operations on or about the Assignment Filing Date, and ceased making any payments to its creditors as of that date. Thus, the Involuntary Petition appears to have been commenced strategically by the Petitioning Creditors so as to be filed less than 120 days but more than 90 days after the Assignment Proceeding, thereby qualifying for the entry of an order for relief under Section 303(h) of the Bankruptcy Code, while at the same time seeking to moot the Preference Actions by replacing New Jersey's 120-day preference lookback period from the Assignment Filing Date (which subjects the Petitioning Creditors to significant preference liability) with Bankruptcy Code Section 547(b)'s 90-day lookback from the Petition Date.

12.     In denying the Assignee's Motion to Dismiss the Involuntary Petition (the "Motion to Dismiss") [DE 27], this Court held that the "main point of the petition" was not to avoid liability in the Preference Actions. Bench Decision dated 5/12/17 (the "Motion to Dismiss Decision"), p. 17, DE 42. Nonetheless, it cannot be denied that, if the Trustee is not permitted to pursue the Preference Actions, the effect of the commencement of the Bankruptcy Case will be that the Petitioning Creditors will avoid exposure to substantial preference liabilities under New Jersey law.

13.     Following the filing of the Bankruptcy Case, the Petitioning Creditors also filed an emergency motion seeking the appointment of a trustee [DE 16].  In response, the Assignee filed the Motion to Dismiss, which argued, among other things, that the commencement of the Bankruptcy Case would cause the loss of value from the Preference Actions to the detriment of the creditors of Scandia.

14.     By order dated May 8, 2017, the Bankruptcy Court denied the Motion to Dismiss [DE 39].

15.     On May 9, 2017, the United States Trustee appointed Yann Geron as interim chapter 7 trustee in the Debtor's case [DE 41].  Mr. Geron has since qualified as permanent trustee and he is currently serving in that capacity.

16.     To determine the universe of claims in the Bankruptcy Case, the Trustee established a claims bar date of November 27, 2017 (the "Claims Bar Date").  A total of sixty-eight (68) claims were filed by the Claims Bar Date with a total face value of $2,319,844.07, the vast majority of which assert general, unsecured claim status.  Alleged secured and priority claims account for about $175,000 of the total claims filed.

17.     Therefore, recovery by the Trustee on account of the Preference Actions would benefit the creditors of this estate significantly and ensure a distribution to general, unsecured creditors, who might otherwise receive little, if any, distribution.

**Argument**

18.     While there is little precedent for this application, the Court can and should permit the Trustee to pursue the Preference Actions.

a.   The Bankruptcy Code Contemplates the Continuation of the Assignment Proceeding Following the Commencement of the Bankruptcy Case

19.    As a threshold matter, the Bankruptcy Code does not mandate the termination of the appointment, under state law, of a custodian over the property of a debtor. *See, e.g., French Bourekas, Inc. v. Turner*, 199 B.R. 808, 815-816 (E.D.N.Y. 1996) (holding that a state court receiver appointed prior to the bankruptcy filing is authorized to continue to operate pursuant to 28 U.S.C. §959:  "the commencement of a bankruptcy case does not … 'discontinue' a receivership").  Thus, while Bankruptcy Code Section 543(b) generally directs custodians, such as assignees under general assignment for the benefit of creditors,[3] to turn over a debtor's property to the bankruptcy trustee,[4] Section 543(d)(1) specifically excuses compliance with this requirement if the Court finds that "the interests of creditors … would be better served by permitting a custodian to continue in possession, custody or control of such property."

20.    The Court in *In re 245 Associates, LLC*, 188 B.R. 743 (S.D.N.Y. 1995), held that, although the commencement of a bankruptcy case ordinarily supersedes a receivership, the court may continue the receivership upon notice and hearing and relieve the receiver from the "duty to comply with the turnover and accounting requirements of section 543(b), if this better serves the interests of the creditors…" *Id*. at 748-749.  This step allows the receiver to remain in possession while the bankruptcy case continues, but the debtor's property remains subject to the bankruptcy court's jurisdiction.  *Id*. at 749.  In the present case, therefore, the Bankruptcy Code expressly recognizes that the Assignment Proceeding may, at this Court's discretion, continue following the commencement of this case.

---

3 The term "custodian" is defined under the Bankruptcy Code as including an "assignee under a general assignment for the benefit of the debtor's creditors."  11 U.S.C. § 101(11)(b).

4 "A custodian shall – (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case..."  *See* 11 U.S.C. § 543(b)(1).

21.     Both the Bankruptcy Code and case law recognize the important function that assignment proceedings have historically had and continue to have in dealing with insolvency issues.  The voluntary assignment for the benefit of creditors is a procedure having its origins in the common law right to dispose of one's private property as one sees fit and works in harmony with bankruptcy law in that such voluntary assignments serve the same ends of bankruptcy law of protecting creditors against each other and assuring equality of distribution. *Pobreslo v. Joseph M. Boyd Co.*, 287 U.S. 518, 525-526 (1933); *Mayer v. Hellman*, 91 U.S. 496, 500 (1875); *Brashear v. West*, 32 U.S. 608, 614 (1833); *APP Liquidating Co. v. Packaging Credit Co.*, 2006 U.S. Dist. LEXIS 60195, at ** 3-4 (E.D. Wisc. Aug. 24, 2006).

22.     Section 543(d)(2) of the Bankruptcy Code specifically requires the Court to excuse an assignee who has been in place for more than 120 days from the requirement to turn over property of the estate to the trustee, unless such turnover is "necessary to prevent fraud or injustice."[5]  This specific carve-out applies only to assignees, not receivers or other custodians, thereby indicating that the Bankruptcy Code recognizes the unique role of assignees for the benefit of creditors under state law.

23.     Section 543 of the Bankruptcy Code has two legal and practical implications in the present case.  First, pursuant to the application of Section 543's turnover directive, the assignee in the Assignment Proceeding is required to turn over to the Trustee the assets of the Assignment Proceeding, including any recovery on account of the Preference Actions, thereby ensuring that any recovery in the Assignment Proceeding will be for the benefit of the Debtor's bankruptcy estate and the administration of those funds will be under this Court's direction.   The Assignee has complied with this provision by turning over assets in his

---

5 "Upon notice and hearing, the bankruptcy court – (2) shall excuse compliance [with turnover to trustee] if the custodian is an assignee for the benefit of the debtor's creditors that was appointed…more than 120 days before the date of the filing of the petition…"  U.S.C. Title 11 §543(d)(2).

possession, including the proceeds of settlement agreements, amounting to $107,250.86, which the Assignee has reached with respect to certain Preference Actions. By turning over these payments from transferees that received payments that were preferential under New Jersey law, the Assignee has recognized that those settlement payments, and the right to pursue the preference claims that led to those settlements, constitute property of the chapter 7 estate of Scandia.

24.     Second, as evidenced by Section 543(d)(2), the Assignment Proceeding may coexist with the Bankruptcy Case. The continuation of the Assignment Proceeding under the circumstances of this case will enable the Trustee to administer an important and valuable asset of the estate which would otherwise be unavailable to the creditors. The Bankruptcy Code's acknowledgement of the continuation of the Assignment Proceeding authorizes, and indeed endorses, this result.

b.     Administering the Preference Actions Via the Assignment Proceeding as Property of the Bankruptcy Estate

24.     If this Court grants this application, the Trustee submits that the Preference Actions will be administered by the Trustee precisely as would any other claim belonging to the bankruptcy estate which is being prosecuted in another court, such as a state law personal injury claim in an individual debtor case. All actions of the Trustee in the prosecution of the Preference Actions would be subject to this Court's final review and approval. The Trustee will take the necessary steps to gain control over the Preference Actions as the sole fiduciary governing the assets of the Debtor's estate. To this end, to the extent necessary, the

Trustee is prepared to substitute himself as the Assignee in the Assignment Proceeding for the sole purpose of prosecuting the Preference Actions.[6]

25.     The Trustee may consider retaining SM Law under significantly revised compensation terms, or may select other counsel if necessary and appropriate, to represent him in connection with the continued prosecution of the Preference Actions.  The retention of that counsel will be subject to this Court's prior approval in accordance with Sections 327 and 328 of the Bankruptcy Code, and any compensation to such counsel will be subject to application to, and allowance by, this Court.

26.     Any recovery on account of the Preference Actions will be deposited directly into the Debtor's estate account under the Trustee's exclusive control, and an accounting of those funds will be provided to this Court, the United States Trustee, and creditors.  At all times, the Trustee will have sole and exclusive control over all funds recovered on account of the Preference Actions.  Any settlements on account of the Preference Actions would require the express approval of the Trustee and will be subject to approval of this Court on notice to all creditors.

27.     By implementing these procedures and safeguards, the Trustee will be able to collect funds in the Assignment Proceeding and distribute those funds within the Bankruptcy Case under the exclusive jurisdiction of this Court and with all the transparency and accountability that the Bankruptcy Code and Rules require.

---

6 Alternatively, if necessary to distinguish between the Trustee and Assignee, the Trustee could select a qualified party, as approved by this Court, to act as nominee of the chapter 7 trustee with duties strictly restricted and subject entirely to the Trustee's direction and this Court's jurisdiction.

c.    Continuing the Preference Actions Will Benefit the Debtor's Estate and its Creditors

28.    Continuing the Preference Actions within the Assignment Proceeding will not burden the estate with any additional expenses.  SM Law has already completed its analysis of the viable claims and commenced the Preference Actions, which will reduce the Trustee's threshold efforts in prosecuting these actions.  In fact, prior to the filing of the Bankruptcy Case, payments on account of the Preference Actions were received by SM Law, and subsequently tendered to the Trustee as assets of the chapter 7 estate.  Other defendants in the Preference Actions have expressed a willingness to settle, and denial of the instant motion would deprive the estate of recoveries from such defendants.

29.    While the Trustee expressly reserves the right to review and revise the terms of SM Law's retention or retain separate counsel, the Trustee intends to pursue the Preference Actions under suitable contingency fee terms, which will serve to further mitigate the economic risks to the bankruptcy estate of pursuing the Preference Actions.

d.    Alternatively, the Preference Actions Are Directly Recoverable by the Trustee

(i)  The Trustee as Successor to the Rights and Claims of the Assignee

30.    Alternatively, the Trustee should be authorized to pursue the Preference Actions in this Bankruptcy Case.

31.    As an initial matter, the Trustee is empowered to pursue the Preference Actions directly under New Jersey law as successor-in-interest to the Assignee, just as the Trustee is empowered to pursue any other legal rights or remedies arising under state law to realize the maximum return for the estate to further distribution to the Debtor's creditors.  *See In re Balco Equities Ltd.*, 323 B.R. 85, 98 (Bankr. S.D.N.Y. 2005) (a chapter 7 trustee is a fiduciary primarily obligated to maximize return for distribution to unsecured creditors).  The Trustee has

requested that the Assignee turnover the proceeds of the settlement agreements the Assignee has negotiated in connection with the Preference Actions. The Assignee complied with this request, turning over the amount of $107,250.86, thereby demonstrating that, upon the filing of the Involuntary Petition, these funds and the claims from which they resulted are property of the bankrupt estate.[7]

32.    Just as the proceeds of Preference Actions became property of the estate upon the filing of the Involuntary Petition, the unresolved Preference Actions, likewise, became property of the estate at the same time, with the Trustee having the sole power to pursue them. *See In re Flanagan*, 503 F.3d 171, 179 (2d Cir. 2007) ("After appointment of a trustee, a debtor no longer has standing to pursue a cause of action that existed at the time the order for relief was entered. Only the trustee has the authority and discretion to prosecute, defend and settle, as appropriate in its judgment, such a cause of action.") (*quoting* 3 *Collier on Bankruptcy* ¶ 323.03, .03[1], at 323-7 to -9 (15th ed. 2007)).

(ii)    The Trustee as Creditor Under Section 544 of the Bankruptcy Code

33.    Section 544 of the Bankruptcy Code provides an alternative basis for authorizing the Trustee to pursue the Preference Actions in this Bankruptcy Case. Section 544 of the Bankruptcy Code states that a trustee may void transfers of property that are avoidable under applicable law by "a *creditor* holding an unsecured claim that is allowable under Section 502 of this title." (emphasis added). *See* 11 U.S.C. §544(b). In relevant part, the Bankruptcy Code defines a "creditor" as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. §101(10)(a). As further explained

---

7 In the Motion to Dismiss, the Assignee took the position that if the Bankruptcy Case continued, there would be no ability for the Debtor to pursue the Preference Actions. This issue was not briefed by the parties, and the Assignee's position in connection with the Motion to Dismiss was not, we submit, correct, or consistent with the Assignee's subsequent action in turning over the proceeds of his settlement agreements with certain defendants in the Preference Actions.

below, the Trustee submits that he has "creditor" standing under New Jersey law to pursue the Preference Actions.

34.    In ruling on the Motion to Dismiss, this Court gave consideration as to whether a chapter 7 Trustee would succeed to the Assignee's right to assert preference claims under New Jersey law.[8]  This Court denied the Motion to Dismiss even though it concluded, without making an ultimate finding[9], that it did not appear that the chapter 7 Trustee could pursue such claims.  In reaching this conclusion, this Court noted that "At least one other court . . . has concluded that a trustee does not succeed to the powers that a prior receiver or custodian would have had."  Motion to Dismiss Decision, p. 13 (*citing In re Delta Group*, 300 B.R. 918, 922-24 (Bankr. E.D. WI 2003)).

35.    *Delta Group*, the only authority cited by this Court, is not binding on this Court, and is of doubtful precedential value to the facts of this case and in light of other authorities that have analyzed the interplay between state law assignment proceedings and the Bankruptcy Code.

36.    In *Delta Group*, a Wisconsin state court receivership was filed against the Debtor on February 2, 2001.  On March 23, 2001 (just 49 days later), an involuntary chapter 7 petition was filed against the debtor.  The chapter 7 trustee appointed in the debtor's case commenced several adversary proceedings pursuant to Section 544 of the Bankruptcy Code, seeking to avoid and recover transfers made by the debtor within four months of the filing of the

---

8 This issue was not briefed by the parties in connection with the Motion to Dismiss, but was evaluated by the Court *sua sponte*.

9 "I have considered whether a chapter 7 Trustee might succeed to the right to assert such preference claims, but it does not appear that would be the case."  Motion to Dismiss Decision, p. 13.  "The continuation of the Chapter 7 case *may* have the effect of ending the chance to pursue preference actions under New Jersey statute" (emphasis added).  *Id*. at 15.

state court receivership on the basis that the applicable Wisconsin statute allows for the recovery of preferential payments within four months of the filing of the receivership petition.

37.     The Court in *Delta Group* considered two arguments as to whether the bankruptcy trustee could avail himself of the state law avoidance power.   First, the Court considered whether the bankruptcy trustee could utilize the state law power directly.   The Court, in a single paragraph and relying on two inapposite cases, dismissed this argument as inconsistent with the United States Constitution:

> Congress' power to establish uniform laws on the subject of bankruptcy throughout the United States is unrestricted and paramount.   *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108, 73 L.Ed. 318 (1929).   States may not pass or enforce any laws that interfere with or complement federal bankruptcy law, or provide additional or auxiliary regulations.   *Id.*; *In re Wis. Builders Supply Co.*, 239 F.2d 649, 656 (7th Cir. 1956) (voluntary provisions of Chapter 128 of the Wisconsin Statutes were preempted by federal Bankruptcy Act).   Therefore, any argument that a trustee in bankruptcy may avail himself of state law avoidance powers independently of what is proscribed by the federal Bankruptcy Code, must fail.

*Delta Group*, 300 B.R. at 921.

38.     Neither of the cases upon which the *Delta Group* Court relied, *Pinkus* and *Wisconsin Builders Supply*, involved the power of bankruptcy trustees to enforce state laws regarding preferential payments, let alone the power of states to enact such legislation.   At issue in *Pinkus* was an Arkansas insolvency statute which provided for, among other things, the discharge of all the obligations of the insolvent debtor.   *International Shoe Co. v. Pinkus*, 278 U.S. 261 (1929).   As the Supreme Court subsequently held, in distinguishing and limiting the scope of its holding in *Pinkus*, bankruptcy law preempts state insolvency laws, not state laws governing assignments for the benefit of creditors.   *Pobreslo v. Joseph M. Boyd Co.*, 287 U.S. 518, 525-526 (1933).

-14-

39.    Paradoxically, the second case upon which the *Delta Group* court relied, *Wisconsin Builders Supply*, recognized the limited scope of the Supreme Court's decision in *Pinkus* in upholding the voluntary provisions of Wisconsin's assignment statute. *In re Wisconsin Builders Supply Co.*, 239 F.2d 649, 652-653 (7th Cir.), *cert. denied*, 353 U.S. 985 (1957).[10]

40.    Contrary to the holding in *Delta Group*, there is ample precedent for the proposition that the Bankruptcy Code does not preempt state preference laws. *See In re Rexplore Drilling, Inc.*, 971 F.2d 1219, 1222 (6th Cir. 1992) ("state preference law is an adjunct to, and supplemental of, those powers specifically provided for in the Bankruptcy Code which enable the trustee to avoid certain transfers"); *Ready Fixtures Co. v. Stevens Cabinets*, 488 F. Supp.2d 787, 789-793 (W.D. Wisc. 2007) ("The Wisconsin [preference] statute does not interfere in any way with the goals or operation of the bankruptcy code…. To find that the state statute is preempted would force insolvent debtors always to file for bankruptcy, even when simpler, less expensive state proceedings are available to them.   That result is a historical and, if anything, *undermines* the bankruptcy code's focus on protecting (rather than exploiting) the debtor."); *BDI Liquidating Co. v. Quest Graphic, LLC*, 2007 WL 2492740 (E.D. Wisc. Aug. 29, 2007); *APP Liquidating Co. v. Packaging Credit Co.*, 2006 U.S. Dist. LEXIS 60195, at **3-9 (E.D. Wisc., Aug. 24, 2006) ("A receiver's ability to recover a preference payment within 120 days, rather than 90 days, is not a substantial difference that is an obstacle to accomplishing the federal bankruptcy goal of equitable distribution).[11]

---

10 The *Delta Group* Court erroneously stated that *Wisconsin Builders Supply* struck down the voluntary provisions of Wisconsin's assignment statute.   *Delta Group*, 300 B.R. at 921.   It was, in fact, the *involuntary* provisions of Wisconsin's assignment statute that was struck down, and severed from the voluntary provisions, which were upheld.  *Wisconsin Builders Supply*, 239 F.2d at 653-657.

11 The Courts in *Ready Fixtures* and *APP Liquidating* rejected the holding of the United States Court of Appeals for the Ninth Circuit that the Bankruptcy Code preempts all state preference laws.   *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198 (9th Cir.), *cert. denied*, 546 U.S. 927 (2005) (striking down California's preference statute).   *Sherwood Partners* has been roundly criticized and rejected by the state courts of California.   *Credit Managers Assoc. of California v. Countrywide Home Loans, Inc.*, 144 Cal.App.4th 590 (4th Dist. 2006); *Haberbush v. Charles*

41.     The Court in *Delta Group* also considered whether the bankruptcy trustee could avail himself of state law avoidance powers under Section 544 of the Bankruptcy Code. The Court held that the bankruptcy trustee could not avail himself of this state law avoidance power, since Section 544 requires a state law avoidance power to be vested in an individual creditor (not a custodian), and therefore, the letter of the law suggests that a trustee cannot avail himself of the longer preference period afforded by the state statute. *Id*. at 924.  Thus, that court held, since the creditors do not have standing to pursue these claims, the trustee would be unable to assert them standing in their shoes under Section 544.  *Id.*

42.     The Trustee submits that the decision in *In re Kenval Marketing Corp.*, 69 B.R. 922 (Bankr. E.D. Pa. 1987) more closely mirrors the facts of the case at hand and is more persuasive authority than *Delta Group*.

43.     In *Kenval*, the debtor executed an assignment for the benefit of creditors in Pennsylvania on March 8, 1983.  Approximately four months later (121 days), on July 7, 1983, an involuntary chapter 11 bankruptcy proceeding was filed against the debtor.  The chapter 11 trustee subsequently commenced an adversary proceeding, pursuant to Section 544 of the Bankruptcy Code, seeking to avoid certain prepetition preferential transfers under applicable Pennsylvania state law which allows for recovery of transfers that occur within four months prior to the commencement of an assignment proceeding.  The *Kenval* court read Section 544 more broadly than did the court in *Delta Group*.  The *Kenval* court held that a bankruptcy trustee could assume the assignee's avoidance powers in the state court assignment proceeding and continue to

---

*and Dorothy Cummins Family Limited Partnership*, 139 Cal.App.4th 1630 (2d Dist. 2006).  *See also Has the Ninth Circuit Finally Seen the Light?  The Latest Development in Bankruptcy Preemption*, 2009 Ann. Surv. of Bankr. Law 13 (Sept. 2009); *Federal Preemption of State Preference Statute in Sherwood Partners v. Lyons – An Unduly Restrictive Standard?*, 2007 Ann. Surv. of Bankr. Law 10 (Sept. 2007); *The Limits of Bankruptcy Code Preemption: Debt Discharge and Voidable Preference Reconsidered in Light of Sherwood Partners*, 28 Cardozo L. Rev. 1447 (Dec. 2006); *The Preemptive Effect of the Bankruptcy Code for Preference Avoidance Under State-Law Assignments for the Benefit of Creditors*, 25 No. 4 Bankruptcy Law Letter 1 (April 2005).

prosecute those state preference claims in a bankruptcy case. The *Kenval* Court held that,
especially in light of Bankruptcy Code Section 543's acceptance of the continuation of the
assignment proceeding, reading Section 544(b) to allow a trustee to succeed to the right to assert
the assignee's preference claims "makes sense". *Id*. at 930. Moreover, the *Kenval* Court stated
that the intention of Section 543 is not "to divest the…assignee of all authority without granting
the bankruptcy trustee equivalent authority through Section 544(b)." *Id*.

44.    Notably, the *Kenval* court looked to the language of the applicable state
statute to define the role of the assignee. The court held that the relevant Pennsylvania statute
did not treat an assignee as "merely a successor to the assignor but also is a representative of the
assignor's creditors." *Id*. at 930. Similarly, in the present case, the relevant New Jersey statute
provides that an assignee in a state court proceeding is "at all times", a "representative of the
creditors…and shall have the same power to set aside conveyances, and to recover or reach
assets for the benefit of the creditors, as a creditor would have…" N.J.S.A. §2A:19-14.

45.    Notably, the *Kenval* court stated that policy considerations support a
broader interpretation of Section 544 to allow the trustee to pursue the preference claims. The
*Kenval* court noted that a narrower reading of Section 544 that prevents a trustee from pursuing
preferential claims of an assignment proceeding would allow creditors to essentially game the
system by timing an assignment proceeding and a subsequent bankruptcy filing to avoid
recovery. *Id*. at 931-32. This result would be "inconsistent with the spirit and intent of
§544(b)." *Id*. at 932. That is precisely the result which must be avoided in the present case as
well.

46.    The *Kenval* analysis firmly supports the Trustee's right to prosecute the
Preference Actions under the ultimate authority of this Court under Section 544 of the

Bankruptcy Code.   Sections 543 and 544 of the Bankruptcy Code, when viewed in tandem, support the Trustee's direct standing to bring these claims, particularly because it seems likely that the Petitioning Creditors timed their filing precisely to game the system, a risk noted by the *Kenval* court.

47.     Neither *Delta Group* nor *Kenval* is binding on this Court.  However, the facts in *Kenval* more closely resemble the facts in the present case, and the reasoning in that case in light of those facts is strongly suggestive of the result which should be achieved in this case. Notably, unlike the Debtor's case, the assignees in *Delta Group* and *Kenval* had not yet commenced preference actions in the assignment proceeding.  Instead, the subsequently-appointed bankruptcy trustees were trying to step into the shoes of the assignee in order to file preference actions in the respective bankruptcy proceedings.  Here, the Trustee is asking this Court to allow the already-commenced Preference Actions to proceed and partially fund the claims of the estate.

48.     Therefore, as the bankruptcy trustee in *Kenval* was granted standing as a creditor, so too should the Trustee in this case be authorized to assert the rights of the Assignee-as-creditor at the time of the filing in order to pursue the state law preference claims under Section 544 of the Bankruptcy Code.

49.     For all the foregoing reasons, the Trustee respectfully requests that he be authorized to pursue the Preference Actions, either by continuing the Assignment Proceeding as detailed above, or pursuant to Section 544 of the Bankruptcy Code.   The amount of the claims at issue is significant, and while the case law is scarce, the statutory basis and persuasive case law supports the relief sought by this application.

## **Notice and Procedure**

50.    Notice of this application has been given to the Debtor, counsel to the Debtor, the Assignee, all known creditors and parties in interest, all parties requesting notice and the United States Trustee.  Additionally, complete copies of this application have been served upon the Debtor, counsel to the Debtor, the Assignee, all parties requesting notice, and the United States Trustee.  The Trustee submits that no other or further notice is required or necessary.

51.    This application includes citations to the applicable rules and statutory authorities upon which the relief requested is predicated.  Accordingly, the Trustee respectfully submits that this application satisfies the requirements of Local Bankruptcy Rule 9013-1(a).

## **No Prior Relief**

52.    No other application has been made for the relief requested herein to this or any other Court.

(continued on next page)

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order (i) authorizing trustee to continue the Assignment Proceeding, gain control over the Assignment Proceeding, and pursue the Preference Actions in the Assignment Proceedings for the benefit of the debtor's bankruptcy estate, or alternatively, (ii) authorizing the Trustee to pursue the state law preference claims under Section 544 of the Bankruptcy Code, and granting such other and further relief as is just.

Dated:    New York, New York
           March 14, 2018

REITLER KAILAS & ROSENBLATT LLC

*/s/ Yann Geron*
_____
Yann Geron
Jeannette Litos
Reitler Kailas & Rosenblatt LLC
885 Third Avenue, 20th Floor
New York, New York 10022
T: (212) 209-3050
F: (212) 371-5500
ygeron@reitlerlaw.com

*Attorneys for Yann Geron, Chapter 7 Trustee of the estate of Scandia Seafood (New York), Inc.*