Douglas T. Tabachnik, Esq.                                          Objection to Doc. No. 73
LAW OFFICES OF DOUGLAS T. TABACHNIK, P.C.
63 West Main Street, Suite C
Freehold, NJ 07728
Tel: 732-780-2760
Fax: 732-780-2761
dtabachnik@dttlaw.com

Counsel for Beyer Lightning Fish Company, Inc. and
Clear Water Fish Co., Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

SCANDIA SEAFOOD (NEW YORK), LLC          Chapter 7 Case No. 17-10744 (MEW)

                    Debtor.

**OBJECTION TO THE CHAPTER 7 TRUSTEE'S APPLICATION
FOR AN ORDER (I) AUTHORIZING TRUSTEE TO CONTINUE THE DEBTOR'S
ASSIGNMENT FOR THE BENEFIT OF CREDITORS, GAIN CONTROL OVER
SUCH ASSIGNMENT PROCEEDING, AND PURSUE STATE LAW PREFERENCE
CLAIMS IN SUCH ASSIGNMENT PROCEEDING FOR THE BENEFIT OF THE
DEBTOR'S CHAPTER 7 ESTATE, OR ALTERNATIVELY, (II) AUTHORIZING
TRUSTEE TO PURSUE THE STATE LAW PREFERENCE CLAIMS
DIRECTLY UNDER THE BANKRUPTCY CODE**

        Beyer Lightning Fish Co., Inc., and Clear Water Fish Co., Inc., by and through their

undersigned counsel, object to the chapter 7 Trustee's application for an order (i) authorizing

Trustee to continue the Debtor's assignment for the benefit of creditors, gain control over such

assignment proceeding, and pursue state law preference claims in such assignment proceeding

for the benefit of the Debtor's chapter 7 estate, or alternatively, (ii) authorizing Trustee to pursue

the state law preference claims  directly under the bankruptcy code by, and respectfully show to

the Court as follows:

## PRELIMINARY STATEMENT

1.      The Trustee, in his effort to make new law, appears to be making alternative arguments in support of the alternative propositions that: 1) assignment for the benefit of creditors preference actions under state law may be pursued in this case either: a) by the Trustee in state court as a successor to a state court custodian under 11 U.S.C. § 543 or, b) by the Trustee directly in this Court, as successor to the state court custodian's interest, or, in his own right, as successor to the Debtor's interests in estate assets, or alternatively, 2) under the strong-arm provisions of 11 U.S.C. § 544 of the Bankruptcy Code, as the successor to creditors' interests in the estate. All of these proposals must be answered in the negative for there is absolutely no statutory authority from which the trustee may derive such powers. This is so for the following reasons:

    a.   The filing of the bankruptcy case, and the denial by this Court of the Assignee's and Debtor's motion for abstention, created a superseding bankruptcy case such that the state court assignment proceeding is no longer competent as a matter of law to administer assets of the Debtor's estate.

    b.   State court preference actions under the New Jersey statute relevant here are the exclusive province of the Assignee, and are not an asset of the Debtor's estate under the definition of same contained in the Bankruptcy Code.

    c.   The state court preference actions relevant here, and the statute governing them, make the same the exclusive province of the state court Assignee.

Accordingly, creditors do not have the rights to pursue such actions at state law and therefore the trustee does not succeed to such rights by operation of the strong-arm provisions of the Bankruptcy Code under 11 U.S.C. § 544.

d.   The issue upon which the Trustee expends much of his energy, as to whether or not the state court assignment for the benefit of creditors statutes are "preempted" by federal bankruptcy law, is irrelevant to the determination of the issues presented by this motion. It appears presented by the Trustee in an effort to confuse this concept with the fact of "preemption" of an assignment for the benefit of creditors proceeding in state court by a superseding bankruptcy case. These concepts are not interchangeable, notwithstanding the Trustee's efforts to employ them in such a confusing manner.

2.    All that is really necessary to deny the Trustee's Motion  is a plain reading of the statutes contained in 11 U.S.C. § 543 and both the Bankruptcy Code section 544(b) and the New Jersey Assignment for Benefit of Creditors Law at N.J.S.A. 2A:19-3. In addition, a review of section 541 and the definition of the estate reveals no indication that claims possessed by a state court appointed assignee are an asset of the debtor's estate as to which the trustee succeeds.

3.    Moreover, the Trustee's citation to numerous cases upholding the constitutionality of state assignment for the benefit of creditors proceedings, when such cases do not involve the filing of an intervening bankruptcy case, posits a strawman argument. No such premise is posited here. Rather, the issue is that when a bankruptcy case is commenced, the state court assignment

proceeding is superseded. Therefore, cases citing to this proposition are irrelevant to the disposition of the issues present in the motion at bar.

4.      The Trustee erroneously cites to cases dealing with the issue of "field preemption" involving the constitutionality of state insolvency laws, when the issue is not present in the case at bar. The only issue here is whether the initiation of the bankruptcy proceeding terminates the state court liquidation case, and whether the rights of a state court Assignee in a prepetition assignment case somehow devolve to the Trustee in a superseding chapter 7.   They do not.

5.      In the pursuit of his argument that somehow assignment proceedings in bankruptcy proceedings may exist side-by-side, the Trustee reaches far, as he cites two cases that predate either the enactment of current law, its predecessors, or, in one instance, any bankruptcy statute at all.[1] To adopt the Trustee's premise that state court assignment cases and bankruptcy cases may exist side-by-side, would turn history on its head and effect a return to the chaotic set of affairs prevalent in the 19th century that prompted the enactment of the permanent bankruptcy acts to begin with.

## FACTUAL BACKGROUND

6.      The facts of this case are well set forth in this Court's decision *In re Scandia Seafood (New York), Inc.*, 2017 Bankr. Lexis 1298 (Bankr. S.D.N.Y. 2017) and, in the interest of judicial economy and this Court's familiarity with same, will not be repeated here, save for the incorporation of this Court's decision herein by reference. Significantly, the Court noted in its decision that, based upon the record at trial and before the Court, there were significant questions

---

[1] The Trustee does this with the citation to the venerable John Marshall decision in *Brashear v. West*, 32 U.S. 608 (1833), holding on the one hand that an assignment for the benefit of creditors did not constitute a fraudulent conveyance, but lamenting, in the same opinion, the lack of any bankruptcy statute in the United States. Similarly, he cites to *Mayer v. Hellman*, 91 U.S. 496 (1875), a case decided under the short-lived Bankruptcy Act of 1867.

as to the transfer of assets by the prepetition Assignee in the New Jersey assignment proceeding. The Court expressed its judgment that there was a need "for an independent fiduciary to review the pre-assignment dealings between the Assignee and the owners, to review the Management Agreement that was executed, and to review the sale that was made, so that those matters, if appropriate, may be subjected to challenge." *Id*. at*24. The docket of this case does not reveal whether the Trustee undertook any such investigation and there are no applications for any 2004 examinations, other than that filed originally by the undersigned's counsel for the Petitioning Creditors in this case prior to the Trustee's appointment.  The prospective retention proposed by the Trustee in his motion of the very same professionals who likely should have been the targets of such an investigation raises serious concerns.[2]

## **ARGUMENT**

**A.  The Trustee's motion presents an untenable and unsupported proposition by which state court assignment proceedings might exist side-by-side with federal bankruptcy cases, a throwback to the 19th century which was repudiated by statute in 1898, 1938, and 1978.**

7.     The issues presented by the Trustee raise serious issues in history as to the source and reasoning for the enactment of the Bankruptcy Act, which was only first permanently enacted in 1898, although there were fitful attempts at short-lived enactments throughout the 19th century. The chaotic and *ad hoc* state court and common-law mechanisms derived by several states for the liquidation of an insolvent debtor's assets, coupled with periodic financial panics in the 1830s, 50s and 70s, gave rise to a call for a uniform method by which creditors could gain

---

[2] Under applicable law, it is well-settled that those aiding and abetting in a fraudulent conveyance may themselves be subject to liability for the underlying fraud, including counsel. In this regard, the Trustee's proposed retention of SM Law, which is itself responsible for the execution of the questionable transactions on behalf of the Assignee discussed in some detail by this Court, is cause for concern. See, document numbers 13-13 and 13-18 annexed as exhibits M and R, respectively to the Petitioning Creditors' Motion for the Appointment of an Interim Trustee, filed on April 21, 2017. The legal predicates for liability for aiding and abetting are well-established. *Banco Popular N. Am. v. Gandi*, 184 N.J. 161 (New Jersey Supreme Court 2004); *Morganroth v. Norris McLachlan & Marcus, P.C.*, 331 F. 3rd 406 (3rd Cir. 2003); *Oster vs. Kirshner*, 77 A.D.3d 51; 905 N.Y.S.2d 69 (N.Y. App. Div. 1st Dept. 2010).

access to a debtor's assets in a fair manner, and by which the debtor might receive a discharge. [3]

The origin for the requirement that bankruptcy cases supplant state liquidation proceedings was

the enactment of the Bankruptcy Act of 1898. Here, Congress, for the first time, dealt with the

obligation of a custodian in the possession of the debtor's assets at the time of a commencement

of a bankruptcy case to turn over that property to a bankruptcy trustee. [4] "[s]ection 543 has its

origins in section 2a(21) of the Bankruptcy Act of 1898, as amended. Section 2a(21) authorized

bankruptcy courts to (1) require a receiver to deliver property to the trustee; (2) require a receiver

to account to the court; (3) determine the reasonableness of all disbursements made by a

receiver; and (4) surcharge a receiver for any improper disbursements." *Id*.

8.    Clause 21 of section 2a was added by the Chandler Act Amendments of 1938 and

provided bankruptcy courts with the power to compel the turnover of property by a prepetition

receiver or custodian. *Id*. In this section, as amended by the Chandler Act, Congress codified the

superseding effect of bankruptcy cases with respect to prepetition receiverships, general

assignments, and similar proceedings, thus removing potential conflicts and controversies

regarding jurisdiction. By expressly requiring a turnover of assets held by a prepetition

custodian, Congress codified the superseding effect of a bankruptcy filing. *Id*. (*Citing, In re*

*Corporate & Leisure Event Prods., Inc.,* 351 B.R. 724, 732 (Bankr. D. Ariz. 2006) (quoting H.R.

6439, 75th Cong., 1st Sess. 12 (1937)) ("The legislative history expressly recognized that there

was nothing in the Bankruptcy Act of 1898 that required receivers to be divested of property

---

[3] *See Generally*, David A. Skeel, Jr., *Debt's Dominion, A History of Bankruptcy Law in America*, (Princeton University Press 2001), p. 36.
[4] *Collier on Bankruptcy* ¶543.LH (Richard Levin & Henry J. Sommer eds., 16th ed. 2018). The fact that this provision first came into being in 1898 would account for the inapposite result in the case of *Meyer v. Hellman*, 91 U.S. 496 (1876), cited by the trustee, which was decided under the Bankruptcy Act of 1867, 14 Stat. 517, that contained no such requirement of a pre-bankruptcy assignee.

when the debtor is thrown into bankruptcy, but 'the courts have supplied the gap and the bill codifies that result.'").

9.      The Trustee's cited case law supports this position. Specifically, the Trustee's citation to a 19th century case in support of his motion ignores the fact that during much of the 19th century, there was no federal bankruptcy statute.[5] Therefore, preemption was not even an issue. Chief Justice John Marshall declared in 1833 "in the United States, where no bankrupt law exists for setting aside a deed honestly made for transferring the whole of the debtor's estate, for the payment of his debts; the preference given in this deed to favoured (sic) creditors, though liable to abuse, and perhaps to serious objections, is the exercise of a power resulting from the ownership of property, which the law has not yet restrained." *Brashear v. West*, 32 U. S. 614, 8 L.Ed. 801, 804, 1833 U. S. LEXIS 364,**14 (1833)), cited by the Trustee, in his motion, P. 8.

10.      It is clear from the Trustee's own references, that "proceedings under any assignment may be terminated upon petition of creditors filed within the time and manner prescribed by the federal act… It is apparent that Congress intended that such voluntary assignments, <u>unless so put aside</u>, should be regarded as not inconsistent with the purposes of the federal act." *Probreslo v. Joseph M. Boyd Co.*, 287 U.S. 518, 526, 52 S.Ct. 262, 264, 77 L.Ed. 469, 473 (1933)(emphasis added). This conclusion and result remains good law today, and is consistent with the historical underpinnings of the Bankruptcy Act of 1898 and the Chandler Amendments of 1938. The 1898 Act was the first permanent bankruptcy act enactment by Congress, and was intended to ameliorate both disparities in state court liquidations proceedings and abuses of the device of deed of assignment by insolvent debtors that, at the time, tended to

---

[5] See, Federal Judicial Center timeline, January 1, 2012, and presently published at http://www.rib.uscourts.gov/newhome/docs/the_evelution_of_bankruptcy_law.pdf

7

be used by debtors seeking to shield their assets through the conveyance of same to relatives for the purpose of evading creditors' enforcement proceedings.[6]

11.    Thus the assertion by the Supreme Court in the case of <u>West Co. v. Lea</u>, 174 U.S. 590, 596, 19 S. Ct. 836, 1099-1100 (1899),

> Under the English bankruptcy statutes (as well that of 1869 as those upon which our earlier acts were modelled), and our own bankruptcy statutes down to and including the act of 1867, the making of a deed of general assignment was deemed to be repugnant to the policy of the bankruptcy laws, and, as a necessary consequence, constituted an act of bankruptcy per se.

12.    The Supreme Court in that case relied upon an earlier decision of the U.S. District Court for the Southern District of New York, *In re Gutwillig*, 90 F. 475 (S.D.N.Y. 1898), which might be one of the earliest decisions relating to the effect upon an involuntary bankruptcy on a voluntary assignment for the benefit of creditors proceeding in state court. As the court there noted:

> The object of the bankruptcy act is declared to be "to establish a uniform system of bankruptcy throughout the United States." The most fundamental element in every system of bankruptcy has been to provide for and regulate the distribution of the bankrupt's property among his creditors, and to do this by means of the agencies created by the act. That originally was its only purpose. Later, a second element has been added in the provisions for the bankrupt's discharge, upon such terms and conditions as the act may prescribe. The present act fully provides for both of these objects. From the moment an act of congress establishing a uniform system for the administration of an insolvent's estate takes effect, every local or private system for the administration of the same assets, whether originating in the state statutes, or in the debtor's common-law power to transfer his property, and regulated, as in this state, by state law, is necessarily superseded provided the bankrupt act is invoked by creditors within the statutory period of limitation. Both systems cannot operate side by side as respects the same estate; the one must necessarily supersede the other; and the state and voluntary systems must yield to the system established by congress pursuant to the constitution. <u>Voluntary assignments of all a debtor's property in trust for creditors, are just as incompatible with the purposes of the bankrupt act as state insolvent systems, and for precisely the same reasons, viz. because if allowed to</u>

---

[6] *See,* Skeel, fn. 3, *supra.*

<u>stand as against a trustee in bankruptcy they defeat the most essential elements of the bankrupt law; namely, the distribution of the debtor's assets in the manner prescribed by the bankrupt act, and through the agencies to which that act commits them.</u>  Creditors are vested by the act itself with a right to have the bankrupt's assets administered not only in accordance with the act, but through the instrumentalities and under the supervision which the act provides; and this right manifestly cannot be nullified at the mere option of the debtor.  And yet this is precisely what would happen, if voluntary assignments could stand against the trustee in bankruptcy.

<u>Id</u>. at 477-78 (emphasis added).

13.    The Trustee's premise, that state court insolvency proceedings can proceed side-by-side with the bankruptcy proceeding, would defy all notions of historical precedent and rationale for the enactment of the bankruptcy acts, going all the way back to the original Bankruptcy Act of 1800. 2 Stat. 19.  Indeed, the Trustee's own cited case law recognizes this historical precedent.  *Ready Fixtures Co. v. Stevens Cabinets*, 488 F. Supp. 2d 787 (W.D. Wis. 2007) The Ready Fixtures Co., court states,

"It is undisputed that when a bankruptcy petition is filed, federal law trumps state law with respect to the action.  E.g. *11 U.S.C. § 543(a)-(b)*.  That is to say, the parties agree that if Ready Fixtures had filed for bankruptcy, or if its creditors had filed an involuntary bankruptcy on its behalf, the Wisconsin preference statute could not be used to recover any allegedly preferential transfers made to defendant."

*Id*. at 791.

**B. The rights of custodian appointed under state law to pursue preference actions are not
assets of the debtor and the trustee does not succeed to any power of a state court custodian
to prosecute the same**

14.     Conspicuously, the trustee does not discuss the question of whether or not the
assignment for the benefit of creditors state court preference actions-property of the estate, but
rather assumes the same from his discussion. The trustee has asserted that he has authority, either
by reason of the rights to pursue preference actions in the guise of a putative successor to the
state court assignee through operation of 11 U.S.C. §543, or, in the alternative, as the custodian
of the assets of the debtor, or, in a third possibility as an administrator of the so-called "strong-
arm" provisions of the Bankruptcy Code at section 544. A review of this question reveals that the
powers of the state court custodian to prosecute preference actions do not constitute property of
the debtor, but are personal to the state court assignee.  Controlling case law discussed infra,
clearly states that upon the filing of a bankruptcy petition, state assignment proceedings are
superseded.  Consequently, the state preference actions are not "property" under 11 U.S.C. §543.
Even if a court were to allow custodian retention under the turnover exception of 11 U.S.C.
§543(d), such retention would not include dominion over state preference actions.  For the same
reason, the trustee in his position as administrator of the powers delegated to him under section
544, to stand in the shoes of a hypothetical judgment lien creditor, does not inherit to these
rights.

15.     Turning to 11 U.S.C. § 544, the avoidance powers this section gives to a Trustee
or a debtor in possession are for fraudulent transfer claims that belong to at least one unsecured
creditor.   These are fraudulent conveyance claims that might have been pursued outside of
bankruptcy court by a debtor's creditors. These claims proceed on a theory that an insolvent
debtor may not make what are essentially gifts that deprive creditors of assets available to pay
debts. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322,

10

119 S. Ct. 1961, 144 L. Ed. 2d 319 (1999). Therefore, before a bankruptcy takes place,

fraudulent conveyance claims belong to creditors rather than to the debtor. As a consequence,

section 544(b)(1) provides that a bankruptcy trustee may avoid "any transfer of an interest of the

debtor . . . that is voidable under applicable law by a creditor holding an unsecured claim." 11

U.S.C. § 544(b)(1) (emphasis added). The responsibility of the trustee is to "step into the shoes

of a creditor under state law and avoid any transfers such a creditor could have avoided." Univ.

Church v. Geltzer, 463 F.3d 218, 222 n.1 (2d Cir. 2006).

16.    The avoidance claims which may be brought under 11 USC 544 do not belong to

the debtor, the trustee or the debtor in possession and are not property of the debtor's estate.

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics*

*Corp.)*, 226 F.3d 237 (3d Cir. 2000). There, the court examined whether the sale of the debtor's

assets included the right to bring fraudulent conveyance actions, and determined that such rights

are not included in the debtor's assets. *Id.* at 244.

17.    In answering the question of whether or not such powers constitute an asset of the

estate the Third Circuit answered the question thus:

>    This attribute is no more an asset of Cybergenics as debtor in possession than it would be
>    a personal asset of a trustee, had one been appointed in this case. Much like a public
>    official has certain powers upon taking office as a means to carry out the functions
>    bestowed by virtue of the office or public trust, the debtor in possession is similarly
>    endowed to bring certain claims on behalf of, and for the benefit of, all creditors.

18.    *Id.* The court distinguished between the powers to augment a debtor's estate from the

proceeds of the exercise of such power. *Id.*at 245. This view is endorsed in the case of *In re Ames,*

*Department Stores*, 287 B.R. 112, 125 (Bankr. S.D.N.Y. 2002) (analogizing the power of avoidance to

the rights of a debtor under section 365(f) to compel lessors to accept assignments as "not, by itself, an

*additional* basis for finding a property right, but should be regarded only as a means or mechanism for

realizing on the underlying economic value in the lease, or securing that value as proceeds of the lease."

(emphasis in the original)).

19.    It is in this context that we read the case of *Dubis v. B.W. Supply (In Re Delta Group)*, 300 B.R. 918 (E.D. Wis. 2003), aff'd, 336 B.R. 405 (E.D. Wis. 2004), which stated

unequivocally that, in connection with a Wisconsin statute similar to that of New Jersey's, a

chapter 7 trustee does not succeed to the avoidance powers granted to receivers and assignees

under the Wisconsin statute. The Wisconsin statute in question provided as follows:

> If the debtor has given a preference within four months before the filing of a petition …
> and the recipient has reasonable cause to believe that the enforcement of the judgment or
> transfer would effect a preference, the judgment shall be voidable <u>by the receiver or
> assignee, and the receiver or assignee</u> may recover the property or its value from the
> recipient.

*Id*. at 921. In analyzing whether or not the rights here enumerated devolved upon a

Chapter 7 trustee under section 544(b)(1)[7] the court examined the relevant language of

this portion of the Bankruptcy Code:

> The trustee may avoid any transfer of an interest of the debtor in property or any
> obligation incurred by the debtor that is voidable under applicable law by a creditor
> holding an unsecured claim that is allowable under § 502 of this title …

*In re Delta Group,* at 922 (quoting 11 U.S.C. § 544(b)(1)). Citing to Seventh Circuit

precedent, the court noted, "' in other words, if any unsecured creditor could reach an

asset of the debtor outside of bankruptcy, the Trustee can use §544 (b) to obtain the asset

for the estate.'" *Id.*, *Quoting, In re Leonard,* 125 F 3rd 543, 544 (Seventh Circuit 1997).

The Delta group court continued, "Stated simply, for the Trustee to succeed in this case,

an unsecured creditor must be able to avoid transfers under Wis. State § 128.07(2)."

20.    The court then considered the rubrics of statutory construction and that, in

determining a legislature's intent, the court must first resort to the language of the statute itself.

---

[7] 11 U.S.C. § 544(b)(1).

*Id.* The court applied this principle to both the determination of the meaning of the Wisconsin

Legislature in enacting the relevant provisions of the Wisconsin statutes, and then to the

determination of Congress's intent with respect to the language of section 544(b) of title 11. In

this regard, citing United States Supreme Court precedent, the *Delta Group* court noted that

"Congress clearly and unambiguously expressed that strong-arm powers of §544 are those held

by creditors not custodians. Generally, Congress 'says in the statute what it means and means in

the statute what it says.'" *Id.* at 923 *(quoting, Connecticut National Bank v. Germain,* 503 U.S.

249, 254, 117 L.Ed. 2d 391, 112 S. Ct. 1146 (1992)).* "When 'the statute's language is plain…

The sole function of the courts is to enforce it according to its terms.'" *Id.* at 923-24 (*quoting,*

*U.S. v. Ron Pair Enterprises, Inc.,* 49 U.S. 235, 241, 103 L.Ed. 2ᵈ 290, 109 S.Ct. 1026 (1989)).

Stated simply, section 544(b) does not give the trustee the authority and powers of a state court

custodian, and the New Jersey statute upon which the trustee relies does not give the authority to

recover preferences to creditors. The two trains simply do not meet and no amount of wishful

thinking or creative reading of statutes on the part of this Trustee can alter that simple fact.[8]

---

[8]    In his efforts to discredit the bona fides of the *Delta Group* case*,* the Trustee misconstrues two of the cases relied upon by that court for its decision. The reasoning behind the *Delta Group* court's citation to *International Shoe Co. v. Pinkus*, 278 U.S. 261 (1929), was for the purpose of utilizing that case making to make the point that if the Chapter 7 trustee in that case was to utilize state court powers for the purposes of avoiding preferences, he had to do so by reason of the authority conferred upon him by the bankruptcy act. "Therefore, any argument that a trustee in bankruptcy may avail himself of state law avoidance powers independently of what is prescribed by the federal Bankruptcy Code, must fail." *Delta Group* at 921.  This concept is not readily subject to dispute. The trustee's own arguments are predicated upon his citation to the Bankruptcy Code itself, and not some independent authority under New Jersey state law that might somehow relate to the power of chapter 7 trustees in federal bankruptcy cases.

Similarly, the Trustee misconstrues the purpose for the citation by the *Delta Group* court To the Case of *In re Wisconsin Builders Supply Co.,* 239 F.2d 649 (7ᵗʰ Cir. 1956). Seventh Circuit, citing to the *International Shoe* case merely held that when a state's assignment for the benefit of creditors statutes exceeded the scope of such a statutory scheme and delved into subject matter otherwise covered by the federal Bankruptcy Act, that they go too far and are therefore "suspended," as in the case of the Arkansas statutory scheme at issue there. *Id.* at 651. In both instances, the Trustee attempts to see things in these cases that are not there in order to construct an argument predicated upon false premises and misconstrued case law. Notably, the court in *Wisconsin Builders Supply Co.* reaffirmed the notion that upon the filing of creditors of an involuntary bankruptcy petition, the administration of the debtor's assets is transferred to the bankruptcy court. There is no provision here for the continuation of the state court insolvency proceedings. *Id.* at 653.

21.    In sharp contrast, the Trustee cites to the 1987 case of *In re Kenval Marketing Corp.*, 69 B.R. 922 (E.D.Pa. 1987), which held that a Chapter 7 trustee succeeds to the rights of a pre-existing state court custodian or receiver and that, moreover, a Chapter 7 trustee may also avail himself of remedies available exclusively to a state court assignee, even if no assignment proceeding was pending. Apart from the fact that the statute at issue in that case is very different than the one at issue in the case at bar, such that the court need not have reached such lofty conclusions in achieving the result that it did,[9] the principles of statutory construction enunciated in that case must be considered overruled by subsequent pronouncements by the United States Supreme Court in *Connecticut National Bank* and *Ron Pair Enterprises*, and as quoted in the *Delta Group* case. Given the Supreme Court's pronouncements in this regard and as quoted above, the *Kenval* court's principles of statutory construction, promulgated in February 1987, can no longer be considered viable.

22.    Similarly, the Trustee misrepresents the case of *Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171 (2d Cir. 2007), cited at page 12, for the proposition that the trustee's pursuit of actions under state law abrogates to the trustee all state law, no matter who may execute them. In that case, the court noted that the equitable remedy of a constructive trust, ordinarily available to creditors against the debtor at state law, is an equitable remedy that may be utilized by a trustee. That case did not hold that the trustee succeeds to rights that are only held by custodians under state law. Nor did it stand for the proposition, as the Trustee would

---

[9]    In *Kenval*, the Pennsylvania statute under consideration, *39 P.S. § 151* (LEXIS-NEXIS 2018) specifically allowed for any transfer made by a person within four months of an assignment "to inure to the benefit of *all creditors* of such insolvent." *Id.* (emphasis added). This language differs sharply from the language of the New Jersey statute *N.J.S.A. 2A:19-3* (LexisNexis 2018), which provides specifically, "such preferential transaction shall be *void as against the assignee. The assignee may recover the property given by way of preference*, or the value thereof, from the person so receiving the same or so benefited thereby." *Id.* (emphasis added). Unlike the Pennsylvania statute, there is no hint of any language in the New Jersey statute that provides the right of creditors to avoid preferential transfers or that makes the same void as against any creditor wishing to assert such a position.

have this Court believe, that a Chapter 7 trustee may exercise any choses in action available

under state law, no matter who may assert them, even if they are not reserved to either creditors

or the debtor.

23.     Moreover, this Court should not be confused by the Trustee's attempts to conflate

the concept of "conflict preemption" of state law by federal law under the United States

Constitution's supremacy clause, with the concept of "preemption" of state court assignment

proceedings by superseding bankruptcy cases. Here, the Trustee attempts to argue that, because

certain state insolvency statutes are not held to have been "preempted" by the Bankruptcy Code's

insolvency scheme, state court assignment proceedings and federal bankruptcy proceedings may

exist side-by-side. The two concepts are not the same and the fact that state based assignment

statutes are not always preempted by federal law does not mean that assignment proceedings can

exist side-by-side with bankruptcy proceedings. To propose the notion that a state statute is not

preempted has anything to do with the preemption of a state court assignment proceeding by the

filing of a bankruptcy proceeding, is to engage in sophistry. In point of law, the Trustee's citation

to the case of *APP Liquidating Co.*, 2006 U.S. Dist. Lexis 60195 (E.D. Wis. 2006), cited by him

at p. 8 of his motion, presented the issue of whether "conflict preemption" precluded the

utilization of Wisconsin insolvency law, and did not involve at all the question of whether a

superseding bankruptcy filing terminated a state court assignment proceeding.

24.     The same is true with the Trustee's misguided citation to the case of *Haberbruch*

*v. Charles & Dorothy Cummins Family Limited Partnership*, 139 Cal. App 4th 1630 (Cal. Ct.

App 2006). This case actually acknowledged that "because proceedings under state voluntary

assignment law 'may be terminated upon the petition of creditors filed… [as] prescribed by the

federal act,' such voluntary assignments "should be regarded as not inconsistent with the

purposes of the federal act." *Id.*, at 1639, n.20, *quoting Probeslo, supra*, at 526. For the Trustee

to argue that because state assignment laws are not universally preempted by the enactment of

the Bankruptcy Code, while citing cases for the proposition that this is so because the assignment

proceeding is superseded by the filing of a bankruptcy case, and that somehow both proceedings

can exist side-by-side, is a mind-numbing exercise in circular reasoning. This is simply

nonsense.

25.     The Trustee's assertion that a Chapter 7 trustee is a successor in interest in any

way shape or form to a state appointed assignee in a prepetition state assignment case is simply

without foundation and completely misguided. The Trustee's citation to the case of *In re Balko*

*Equities, Ltd.*, 323 B.R. 85, 98 (Bankr. S.D.N.Y. 2005) does not say anything about such

succession. Indeed, by the Trustee's citation to this case, and to the similarly disconnected *Cadle*

*Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 179 (2d Cir. 2007), the Trustee is attempting to

make the quantum leap that because he is vested with authority to marshal the assets of the

Debtor, that he not only stands in the shoes of the Debtor and the Creditors, but also state court

custodians who possess rights that well exceed those of debtors or creditors. *See, Haberbush v.*

*Charles & Dorothy Cummins Family Limited Partnership*, 139 Cal. App 4th 1630, 1639 Cal.

Rep. 3d 814, 819, note 22 ("the assignee has powers that individual unsecured creditors do not

have"). From these generic assertions of a trustee's ability to marshal assets of the debtor, the

Trustee here leads to the conclusion, without any support whatsoever, that he stands in the shoes

of a custodian as well as a debtor and a creditor, where there is absolutely no statutory or legal

authority for such a proposition. The Trustee thus glosses over both the limitations of the concept

of the assets of the estate, and the limitations of the shoes into which he steps when he is

appointed.

26.     The Trustee, in an ever shifting position, then asserts that he may pursue the

preference actions as a "creditor" pursuant to the provisions of section 544. (Trustee's motion at

page 12). For the reasons stated above, even though the Trustee is clothed with the rights of

prepetition creditors to pursue avoidance actions, the New Jersey statute does not provide

creditors with the right to pursue preference actions.

**C. The Trustee's assertion that section 543 of the bankruptcy code supports the
continuation of the state court assignment for the benefit of creditors proceeding is entirely
unsubstantiated and based upon faulty citation to case law**

27.     The Trustee's assertion that somehow section 543 supports the continuation of the

assignment proceeding is based upon cases that are inapposite to the one at bar particularly in as

much as it requires, for its premise, the notion that the rights of a prepetition custodian in state

court constitute property rights of a debtor that devolve upon the trustee. The Trustee goes to

great lengths to overlook the fact that there is no authority whatsoever for a Chapter 7 trustee to

litigate a state court preference action when the action at state law is not reserved to creditors. In

this instance, the state law involved is only exercisable by an assignee, in a proceeding that is

superseded when a Chapter 7 bankruptcy case is filed, such as this one.

28.     First and foremost, the Trustee's own case law supports the uncontestable premise

that this bankruptcy action has superseded the state court action for the assignment for the

benefit of creditors. *In re 245 Assocs.*, 188 B.R. 743, 748 (S.D.N.Y. 1995)("Ordinarily, the

commencement of the case "supersedes the custodianship." This case involved state court

receiver holding debtor's only asset - an office building).  The administration of the bankruptcy

estate is now under the purview and jurisdiction of this Court.  Any preference actions must be

brought in this bankruptcy proceeding pursuant to 11 U.S.C. § 547 and meet the elements set

forth therein, including the ninety day look back period. *Perosio v. NBT Bank Nat'l Ass'n (In re Perosio)* 277 Fed App'x 110, 111-12 (2d Cir. 2008); *Pereira v. UPS (In re Waterford Wedgwood USA, Inc.*, 508 B.R. 821, 826 (Bankr. S.D.N.Y. 2014.).

29.    The Trustee disingenuously argues that 11 U.S.C. §543 provides authority for this Court to continue the state court assignment proceeding and allow for prosecution of preference actions in the state court pursuant to New Jersey state law.  A review of 11 U.S.C. §543 shows that it provides no such authority.

> Pursuant to 11 U.S.C. §543(a),
>
> A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents or profits of such property, or property of the estate, in the possession, custody or control of such custodian, except such action as is necessary to preserve such property.

11 U.S.C. § 543(a) (LexisNexis 2018)

> 11 U.S.C. §543(b)(1) states;
>
> A custodian shall (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case;

11 U.S.C. § 543(b)(1) (LexisNexis 2018)

30.    The custodian's duty under 11 U.S.C. §543 to refrain from any further action in the administration of property of the debtor's estate and to deliver the estate property is absolute. *In re Constable Plaza Assoc. L.P.*, 125 B.R. 98 (Bankr. S.D.N.Y. 1991).  An assignee in an assignment for the benefit of creditors is a custodian pursuant to Bankruptcy Code 11 U.S.C.

§101(11).[10]   It is clear that an assignee in a state assignment for the benefit of creditors is

required to turn property over to the bankruptcy estate because the state action is now defunct,

superseded by the bankruptcy action.  *In re 245 Assocs.*, 188 B.R. 743 (Bankr. S.D.N.Y. 1995).

In discussing a custodian's duty under 11 U.S.C. § 543, the *In re 245 Assocs.* court stated, "Once

the receiver becomes aware of the filing of the petition, including an involuntary petition, he

cannot make any further disbursements or take any action except to do what is necessary to

preserve the property."  Id. at 748.

31.    In his papers, the Trustee acknowledges the custodian's duty to turn over all

estate property to the trustee.  However, the Trustee relies on 11 U.S.C. §543(d)(1) for his

argument that in certain circumstances, the assignment action may be kept active because in

certain circumstances, the custodian is not required to turn over the property to the trustee.  11

U.S.C. §543(d)(1) provides that:

> (d) After notice and hearing, the bankruptcy court—
>
> (1) may excuse compliance with subsection (a), (b), or (c) of this section if the
> interests of creditors and, if the debtor is not insolvent, of equity security holders would
> be better served by permitting a custodian to continue in possession, custody or control of
> such property,

11 U.S.C. § 543(d)(1) (LexisNexis 2018)

32.    The glaring fallacy in the Trustee's argument is that 11 U.S.C. §543 deals

exclusively with the custodian's disposition of "property" of the estate.  11 U.S.C. §543(d)(1)'s

very limited exception also deals exclusively with when a custodian does not have to turn over

---

[10] Cf. *French Bourekas, Inc. v. Turner*, 199 B.R. 808, 815-816 (E.D.N.Y. 1996), cited by the Trustee at page 7. This
case involved a receiver appointed under 28 U.S.C. §959(b). However, unlike an assignee in a state court
assignment for the benefit of creditors proceeding, a receiver appointed under this statute is not a custodian under
the Bankruptcy Code, *Adams v. Marwil (In re Bayou Group, L.L.C.)*, 363 BR 674, 687 (S.D.N.Y. 2007) (receiver
appointed pursuant to the Securities Exchange Act of 1934).

"property" of the estate.[11]   The Trustee is not requesting that the Assignee in the state action be

permitted to keep any of the property of the estate because it is in the best interest of the

creditors.  Indeed, in his papers, the Trustee expressly states that in accordance with 11 U.S.C.

§543, the Assignee has turned over all property of the estate in his possession to the Trustee.[12]

Rather, the Trustee is asking the Court to keep the state court action active and allow the

Assignee to prosecute preference actions in the state court proceeding pursuant to New Jersey

law.  There is no "property" in the Trustee's request.  The Trustee's hollow attempt to

extrapolate authority to prosecute New Jersey preference actions exclusively reserved to a

custodian, in a defunct state court assignment proceeding, from a statute that deals with a

custodian's disposition of estate property is a shameful abrogation of 11 U.S.C. §543.

33.    The request is even more nonsensical considering that there are no preference

actions to be prosecuted in the state court assignment proceedings.  Any preference action must

be brought in the bankruptcy proceeding pursuant to 11 U.S.C. §547.

34.    The only application 11 U.S.C. § 543 has to the facts before this Court is that the

Assignee was required to turn over estate property within his control to the Trustee, which he has

done.  Invocation of 11 U.S.C. §543(d)(1) is inappropriate where the matters concerning the

---

[11]    Moreover, the Trustee cannot avail himself of 11 U.S.C. § 543(d)(2), as the Assignee did not take
possession of any assets more than 120 days prior to the filing of the involuntary bankruptcy petition.

[12]    Were this a case where 11 U.S.C. §543(d) was appropriately considered, the Trustee's request for
application of same would fail because the Assignee has already divested himself of the estate property.  A court
cannot revest control of the debtor's property to the assignee where the interest has already been terminated.  *In re
Watkins*, 63 B.R. 46, 48 (Bankr. D. Colo. 1986.).

Moreover, a distinction needs to be made between the money recovered by the Assignee, which was an
asset of the estate and duly turned over to the Trustee, and claims by the Assignee exclusively delegated to him by
statute. The fact that the Assignee properly turned over the funds in his possession to the Trustee, as required, does
not also mean that the causes of action themselves on unrealized preference recoveries are also property of the
estate. The prevalent view is that avoidance actions in the hands of the trustee are not property of the estate. *See
generally*, 5 *Collier on Bankruptcy* ¶ 541.12 (Richard Levin & Henry J. Sommer eds., 16th ed. 2018), for analogous
reasoning with respect to the disposition of such assets by a trustee, with the additional caveat that in this instance
the causes of action are owned not by a trustee but by a state appointed assignee pursuant to a statute in a proceeding
that has been terminated by operation of law. See the complete discussion of this issue, *supra*, at page 11.

custodian's retention relate not to possession of property, but rather to estate administration.  *In re Queen City Grain Co.*, 32 B.R. 346, 350 (Bankr. S.D. Ohio 1983).  ("Relief under 543(d) would not confer upon the co-receivers the authority, for example, to pay claims to creditors or to conduct litigation on behalf of or in defense of debtor.")  In each of these instances in which 543(d)(1) was applied, there were actual assets to administer, universally real property.

35.     As further evidence that 11 U.S.C. §543(d) does not give a custodian power to prosecute preference actions, when courts are considering whether the exception of 11 U.S.C. §543(d) applies to allow a custodian to retain control of estate property, they consider certain factors.  *In re Constable Plaza Assoc. L.P.*, 125 B.R. at 103.  These factors include whether there will be sufficient income to fund a successful reorganization, whether the debtor will use the turned over property for the benefit of the creditors and whether there has been mismanagement by the debtor. *Id.* Key to an understanding of the limited control that 11 U.S.C. §543(d)(1) gives to a custodian who is permitted to retain property is the fourth factor.   Pursuant to this fourth factor, a bankruptcy court must consider whether there are avoidance issues raised with respect to the property retained, as a custodian does not possess avoiding powers for the benefit of the estate. *Id.*[13]

36.     Further to this point, the court in *In re Plantation Inn Partners*, 142 B.R. 561 (Bankr. S.D.Ga. 1992), stated, "to permit the Receiver to indefinitely remain in possession and to vest him permanently with all duties and powers of a debtor-in-possession goes far beyond the limited relief envisioned in Section 543." *Id.* at 564. That court went on to state, "Clearly the

---

[13] In this case, the Court need not get to a consideration of these factors as 11 U.S.C. §543(d) has no applicability to the Trustee's Motion before the Court.  In a factual scenario where 11 U.S.C. §543(d) may apply, the movant seeking application of such provision must prove cause by a preponderance of the evidence to excuse the receiver from the turnover provisions.  *In re Lizeric Realty Corp.*, 188 B.R. 499 (Bankr. S.D.N.Y. 1995)(issue is real property held by state court receiver, and no showing that there would be successful chapter 11 reorganization).

Code contemplates that the long-term administration of a Chapter 11 case will be managed by a trustee or debtor-in-possession, not a hybrid created by judicial fiat." *Id.*

37.   The Trustee's citation to *In re 245 Assocs.*, 188 B.R. 743 (Bankr. S.D.N.Y. 1995) as support for prosecuting state preference actions in the state court assignment proceeding is misleading.   That case involved a receiver's request for attorney's fees during the brief period the court authorized him to keep control over a debtor's building pursuant to 11 U.S.C. §543(d)(1). The debtor had objected to the mortgagee of the building's request for retention under 11 U.S.C. §543(d)(1) and the court ordered temporary retention pending an outcome of an evidentiary hearing on the matter.   Prior to the conclusion of the evidentiary hearing, the parties reached an agreement and the receiver divested of the property pursuant to 11 U.S.C. §543.

38.   Far from reaching a decision that stated an assignment for the benefit of creditors may continue with prosecution of preference actions in the state court proceeding, the *In re 245 Assocs.*, the court never even reached a conclusion that the exception under 11 U.S.C. §543(d)(1) would apply to the receiver's control of the building  in that case. Further, at issue in that case was the receiver's continued control of real property and not prosecution of state court preference actions.

39.   In sum, 11 U.S.C. §543(d)(1) clearly does not provide authority for the Court to allow the Assignee or the Trustee or a designee of the Trustee to prosecute the state court preference actions in the state court proceeding in New Jersey.[14]   The Assignee has divested

---

[14] 11 U.S.C. §543(d)(2) does not apply as it only has possible application in cases where an assignee for the benefit of creditors was appointed or took possession more than 120 days before the filing of the petition.  However, this section would also not apply, because the Assignee at issue holds no estate property, rendering all decisions of 11 U.S.C. §543(d) moot.

himself of the estate property and the state court proceeding has been superseded by the

bankruptcy action.

40.     The Trustee's argument of how prosecution of the preference actions in the state

court will not burden the estate with any additional expenses begs the question of the unlawful

nature such preference actions would present.  The state preference actions are 1) not property of

the estate and 2) not available to the Trustee under state or federal law.  Therefore, any

discussion or consideration of the cost they will entail is moot and a waste of this Court's time.

41.     Likewise, in paragraph 21 of his Motion, the Trustee seems to try to argue that the

very fact an assignment for the benefit of creditors exists and is not "preempted" gives his

argument" some credibility.  It does not.  "Congress' power to establish uniform laws on the

subject of bankruptcy throughout the United States is unrestricted and paramount.  States may

not pass or enforce laws that interfere with or complement federal bankruptcy law, or provide

additional auxiliary regulations." *Dubis v. B.W. Supply (In re Delta Group)* 300 B.R. 918, 921

*(Bankr. E.D. Wis., 2003)*, aff'd *Dubis v. B.W. Supply (In re Delta Group) Delta Brands, 336 B.R.*

*405, (E.D. Wis., 2004)*.   Any suggestion that a bankruptcy court should be guided by a state or

states' insolvency laws is patently wrong.  There is absolutely no governing bankruptcy law

allowing the Assignee, the Trustee or a designee of the Trustee to prosecute the defunct state

preference actions in the New Jersey court proceeding pursuant to New Jersey law, particularly

one that reserves on to an assignee the standing to pursue the same.

## CONCLUSION

42.     In summary, the Trustee's efforts to succeed to the efforts of a state court

custodian, where there is no provision for same in the statute upon which he relies, either at the

federal or state level, for the continuation of an assignment proceeding that is superseded by the

institution of bankruptcy proceedings, notwithstanding that the very case law he cites contradicts that, including United States Supreme Court precedent that remains the law of the land for the past 100 years, must fail. For the reasons stated above, the motion must be dismissed.

43.     Moreover, it is clear that by his Motion, the Trustee is trying to have another bite at an "abstention apple". If this Court were to grant the Trustee's request, it would be abstaining from parts of the estate administration in this case. There is no Bankruptcy provision which allows for the kind of *pseudo* abstention the Trustee seeks. Moreover, this Court already soundly ruled that it would not abstain from this case and ruled that administration of this debtor's estate would take place in the bankruptcy forum. This Court also already stated in this case that," I have considered whether a chapter 7 trustee might succeed to the right to assert such preference claims, but it does not appear that would be the case. . . In this case, New Jersey law does not give unsecured creditors the right to challenge preferences. Instead, it gives such a right to the Assignee in the case of an assignment for the benefit of creditors." *In re Scandia Seafood (New York), Inc.,* 2017 Bankr. LEXIS 1298, (S.D.N.Y. 2017). As discussed in herein, the history of the Bankruptcy Code, precedent and other persuasive authority show that this Court was absolutely correct in making that statement.

44.     It is also unfortunate that the Creditors in this case who fought for an independent trustee who might pursue the clearly tainted transactions conducted by the Assignee prior to the institution of this bankruptcy case and in derogation of their rights, may not have received the benefit of their bargain. It is unfortunate that over the course of the past year, not only has there been little evidence of such independent investigation, but now the Chapter 7 Trustee looks to hire the very insiders who might otherwise be liable to the estate for the damages occasioned by the questionable transactions discussed by this Court and by which the insiders received the gift

of the Debtor's business for no consideration. If the Trustee is unwilling and unable to pursue

such an investigation, Creditors may wish to do so themselves, in derivative fashion, and reserve

their right to seek leave of court for such relief.

WHEREFORE, respondents respectfully request that this motion be denied in all

respects, together with such other and further relief as to this Court seems just, proper and

equitable.

Dated: April 26, 2018

Law Offices of Douglas T. Tabachnik, P. C.
Counsel for Beyer Lightning Fish Company, Inc. and
Clear Water Fish Co., Inc.

By: /s/ Douglas T. Tabachnik
Douglas T. Tabachnik
(Admitted in this District)
63 West Main Street, Suite C
Freehold, NJ 07728-2141
(732) 780-2760
dtabachnik@dttlaw.com